THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JORGE ENRIQUE RENDON, Defendant-Appellant.

First District (1st Division)   No. 1—89—2291

Opinion filed September 28, 1992.—Rehearing denied December 22, 1992.—Modified Opinion filed December 28, 1992.

Randolph N. Stone, Public Defender, of Chicago (Michael Davidson and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Barbara Jones, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Enrique Rendon was found guilty, under a theory of accountability, of delivery of a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)) and sentenced to nine years in prison. Defendant argues on appeal: (1) that he was denied a fair trial because the State violated *Batson* during jury selection; (2) that he was not proved guilty beyond a reasonable doubt under an accountability theory; and (3) that prosecutorial misconduct denied him a fair trial.

Nancy Mastaw, a special agent for the Chicago division of the Drug Enforcement Administration, testified that about 2 p.m. on April 18, 1988, she spoke to Javier Rendon on the telephone to arrange the purchase of two ounces of cocaine. Mastaw then talked with surveillance officers to set up operations for the undercover purchase. Mastaw was given $2,000 in official funds and wrote down the serial numbers of the currency. After the arrangements were completed, the surveillance team immediately left the office and set up surveillance in the parking lot of the apartment building located at 6414 North Ridge.

About 4:15 p.m., Mastaw drove to a Shell station where she saw Javier by a telephone speaking with defendant. Mastaw testified that she could not hear what they were saying. She exited her vehicle and walked towards the two, when Javier told her to park the vehicle in a lot across the street. Mastaw then returned to her vehicle, drove across the street and parked in the lot of an apartment building. Javier and defendant then crossed the street. Once Mastaw parked her car, Javier met her and walked with her to a second-floor apartment in the building.

Upon entering the apartment, Mastaw was taken to the kitchen area, where she saw defendant standing next to a table where two other men were seated. Mastaw testified that she heard Javier and defendant speak to each other in Spanish. She saw defendant pick up a plastic bag from the table and hand it to Javier. Mastaw and Javier then went to the back room where she inspected the bag containing the cocaine. Mastaw then walked to her car with Javier and gave him $2,000. She drove around the apartment complex while Javier counted the money, then Javier exited Mastaw's vehicle. Defendant

was later arrested and charged with delivery of a controlled substance.

During jury selection, defense counsel asserted that an Hispanic venire member was excluded by the State's use of a peremptory challenge though no race- or ethnic-neutral reason was given for the exclusion. Additionally, during opening statement the State characterized the case as being about "poison that's invading our country and at sometime or another will directly or indirectly affect many of our lives." The State also elicited testimony that the two men in the apartment at the time of the surveillance were Columbian. In rebuttal closing the State explained the accountability theory by using an illustration of a driver of a car being convicted for robbery even though the driver did not know that his passenger had committed a robbery. The State also made a statement that defendant claimed commented on his failure to testify. The jury returned a verdict finding defendant guilty of delivery of a controlled substance on an accountability theory.

Defendant has raised a *Batson* issue and we shall proceed with that issue first. During *voir dire* by the court of prospective jurors, the State exercised two peremptory challenges, dismissing Mr. Bulmer and Cecilia Gonzalez. Defendant asserts that these individuals were Hispanic, and the State used its challenges to exclude these individuals based on race. Defendant maintains that the State excluded one-half of the Hispanics on the venire, and that the individuals excluded had backgrounds similar to others who were allowed to remain on the jury. Defendant further asserts that he is Hispanic and that the State's chief witness is not. Defendant thus argues that the court erred in determining that he had not established a *prima facie* case of purposeful discrimination.

· To make a *prima facie* showing of a *Batson* violation, it must be proved that members of a racial group were removed from the venire by peremptory challenges and that the removal, in addition to other relevant circumstances, raises an inference of purposeful discrimination by the State in the selection of defendant's jury. (*People v. Andrews* (1992), 146 Ill. 2d 413, 424, 588 N.E.2d 1126.) While a defendant is no longer required to show that he is a member of a cognizable racial group whose members have been excluded in order to prove standing to pursue a *Batson* claim (*Powers v. Ohio* (1991), 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364; *People v. Edwards* (1991), 144 Ill. 2d 108, 579 N.E.2d 336), the racial identity between the defendant and the excluded venireperson remains a relevant fac-

tor in determining if a *prima facie* case of discrimination has been established. *Andrews*, 146 Ill. 2d at 425.

In addition to shared race, a number of other factors relevant in determining whether a *prima facie* case of discriminatory jury selection has been established include: (1) a pattern of strikes against Hispanic venire members; (2) a disproportionate use of strikes against such members; (3) whether the excluded Hispanics were a heterogeneous group sharing race as their only common character; (4) the level of Hispanic representation in the venire as compared to the jury; (5) prosecutorial questions and statements during *voir dire* and while exercising challenges; and (6) the races of defendant and victim or of defendant and witnesses. *People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234.

Here, defendant maintains that the State used one-third of its challenges and struck one-half of the Hispanics on the venire. Additionally, he argues that there were no factors in the excluded potential jurors' backgrounds that would suggest that they could not be fair and impartial. Defendant also points out that the State's chief witness was not Hispanic and that he was. Defendant further contends that the trial court considered the State's explanation for the exclusion of these jurors, thereby raising a presumption that a *prima facie* case had been established.

The State argues that of the 52 members in the venire, there were three who were undoubtedly Hispanic. The State asserts that 21 of the 52 members, including one Hispanic, were excused for cause, and that both the State and defense counsel had eight peremptory challenges. The State excluded Cecilia Gonzalez and Mr. Bulmer. It further points out that there was one Hispanic on the petit jury. The State concedes that Gonzalez was Hispanic. However, the State asserts that there was no evidence in the record that Bulmer was Hispanic nor did Bulmer appear to be Hispanic. The State also asserts that it did not believe that Bulmer was Hispanic. The court shared this belief. The State further maintains that the record does not indicate the race of all the prospective or seated jurors, and that this fact precluded a determination of whether there was purposeful discrimination. The State maintains that defendant's failure to preserve the record for review renders the *Batson* issue waived.

■ Here, defendant's claim does not meet the factors set forth in *Henderson*. The State here used only two of the six challenges it exercised to exclude Hispanics. It is not clear if both excluded jurors were Hispanic, and the defendant made no argument to establish the race of Bulmer. The State and court agreed that Bulmer did not ap-

pear to be Hispanic. Thus, defendant failed to show a pattern of strikes against Hispanic members of the venire. Further, even if Bulmer were Hispanic, the State used four of the challenges it exercised to exclude non-Hispanic members of the venire. There is also no contention here that the prosecutor's questions to the jurors indicated a racial bias. Moreover, because defendant has failed to preserve the record on the race of all the prospective jurors or those seated, it is not possible for us to determine if defendant's contention is supported by the record.

A trial court's determination that a defendant has failed to establish a *prima facie* case of purposeful discrimination is a finding of fact and will not be overturned on review unless it is found to be against the manifest weight of the evidence. (*People v. Garrett* (1990), 139 Ill. 2d 189, 200-01, 564 N.E.2d 784.) We find that the trial court's determination that defendant did not establish a *prima facie* case of purposeful discrimination was not against the manifest weight of the evidence. Defendant's contention that there is a presumption that he established a *prima facie* case is unpersuasive in light of the above facts.

Defendant next argues that he was not proved guilty beyond a reasonable doubt of delivery of a controlled substance under the accountability theory. He asserts that the evidence established only that he was present at a drug transaction, and that no evidence was presented that showed he knew a sale or delivery of drugs was occurring, or that he was involved in planning the transaction.

To sustain a conviction of unlawful delivery based on an accountability theory, the State must establish beyond a reasonable doubt that: (1) the defendant solicited, ordered, abetted, agreed or attempted to aid another in the planning or commission of the delivery; (2) the defendant's participation took place before or during the commission of the delivery; and (3) the defendant had the concurrent, specific intent to promote or to facilitate the commission of the offense. *People v. Darnell* (1990), 214 Ill. App. 3d 345, 573 N.E.2d 1252.

■ In this case, the evidence is undisputed that defendant aided in the delivery of the cocaine. Agent Mastaw testified that defendant was with Javier at the Shell station where she arranged to meet Javier. Defendant then followed Javier across the street and into the apartment where the transaction took place. Mastaw testified that once inside the apartment defendant picked up the clear bag containing the cocaine and handed it to Javier. Her testimony was uncontradicted. Defendant had contact with Javier, was present at the time of the transaction and assisted Javier in the delivery by handing the

clear plastic bag to him during the transaction. It was reasonable for the jury to infer that defendant knew that the bag contained a controlled substance.

The critical inquiry on review of a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Roppo* (1992), 234 Ill. App. 3d 116, 125.) We find that the evidence here was sufficient for the jury to find defendant accountable for the delivery of a controlled substance.

■ Defendant also argues that he was denied a fair trial because of several instances of prosecutorial error during opening and closing arguments. We first note that defendant has waived this argument on appeal as to all but one issue by failing to object and file a post-trial motion raising these issues. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, we agree with defendant's allegation that the prosecutor improperly commented on his failure to testify at trial.

During rebuttal argument the prosecutor stated:

"Also counsel tells you not to condemn the defendant because of the facts in this case, we didn't hear much about the facts in this case from him as they relate to his defense."

An accused has a constitutional right not to testify as a witness in his own behalf, and the prosecution is forbidden to comment on a defendant's exercise of that right. (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229.) In determining whether improper comment has been made on a defendant's assertion of his right not to testify in his own behalf, a court will consider whether the reference was intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify. (*People v. Howard* (1991), 147 Ill. 2d 103, 588 N.E.2d 1044.) In making that determination, a reviewing court will examine the challenged comment in the context of the entire proceeding. *United States v. Robinson* (1988), 485 U.S. 25, 33, 99 L. Ed. 2d 23, 31, 108 S. Ct. 864, 869.

In reviewing the prosecutor's comments, we conclude that the remarks were improper. The prosecutor expressly stated, "we didn't hear much about the facts *** from him." Although the court stated that the remarks were directed toward defendant's attorney, the witness who would have presented any evidence was, of course, the defendant. However, in spite of this constitutional error, a criminal conviction may be affirmed if the reviewing court is able to conclude, upon examination of the entire record, that the error was harmless

beyond a reasonable doubt. *United States v. Hasting* (1983), 461 U.S. 499, 510, 76 L. Ed. 2d 96, 107, 103 S. Ct. 1974, 1981.

We conclude that the error occurring in this case was harmless beyond a reasonable doubt. The State presented eyewitness testimony by Agent Mastaw detailing defendant's participation in the delivery of cocaine. Mastaw testified that she spoke to Javier on the telephone to arrange the purchase of two ounces of cocaine. She then talked with surveillance officers to set up operations for the undercover purchase. Matsaw testified that she arranged to meet Javier at a Shell station and upon arriving there she saw defendant with Javier. Mastaw later saw defendant while at Javier's apartment. Defendant and Javier spoke to each other in Spanish and defendant lifted the plastic bag containing cocaine from the table and handed it to Javier. Under these circumstances, we find that the prosecutor's comment was harmless beyond a reasonable doubt. *People v. Arman* (1989), 131 Ill. 2d 115, 127, 545 N.E.2d 658.

For the above reason, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.